## 54925. TENNESCO, INC. v. BERGER et al.

ARGUED NOVEMBER 3, 1977 — DECIDED NOVEMBER 17, 1977.

*McCurdy & Candler, George H. Carley, John Perry Cripe,* for appellant.

*Zusmann, Sikes, Pritchard & Cohen, Charles C. Pritchard, Abraham A. Sharony, George G. Finch,* for appellees.

DEEN, Presiding Judge.

1. Under Code § 81A-169 a judgment creditor may, in aid of the judgment, propound interrogatories of the judgment debtor "in the manner provided by this Title." Code § 81A-133 (a) sets out the manner of preparing and serving interrogatories on any adverse party and provides: "Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons for objection shall be in lieu of an answer." As to objections to questions 2 through 105 each defendant made a blanket statement

that the information requested "may tend to incriminate me and further . . . furnishing the said information requested in interrogatories 2 through 105 may tend to work a forfeiture of my estate." As we construe the codal requirements, each interrogatory must be either answered or objected to and the reason stated for the objection. A blanket statement referring without explanation to all questions indifferently is not a compliance.

2. Why answering any or all of the questions posed would work a forfeiture of the defendant's estate is not explained. This objection, if it means merely that answering would interfere with the defendant's mode of earning a living, is not acceptable. *Aldridge v. Mercantile Nat. Bank,* 132 Ga. App. 788 (1) (209 SE2d 234). Nor does it cover a pledge by the defendant not to reveal the information. *Plunkett v. Hamilton,* 136 Ga. 72 (7) (70 SE 781). Forfeitures to the state for crime are of course abolished. Code § 85-1109. No circumstances are suggested under which this objection could be operative.

3. The self-crimination objection is more complicated. It, like forfeiture of estate, is a valid objection raising the point of personal privilege where applicable. Code § 38-1205. In the present case there are doubtless questions which, if the defendant has engaged in illegal business practices, would tend to be incriminating. An example would be questions relating to the amount of interest received on investments, which might under certain circumstances reveal or suggest usurious practices, or, whether or not the defendant had done so, whether the answer might be used by some prosecutor as a link in a chain attempting to establish such fact. Other questions such as whether the defendant had received payment of royalties in the past five years, or been a party to other litigation, or suffered a casualty by fire, wind or theft, may not be relevant but it is hard to think they might be incriminating.

The real question here is whether the party being examined has the sole discretion to decide whether or not to answer the question propounded, or whether there is some threshold point at which the judge should decide whether the question *could* be incriminating and, if he

feels the answer is in the negative, then insist that the witness reply; otherwise, the witness is the sole judge of what his answer would be. *Empire Life Ins. Co. v. Einstein,* 12 Ga. App. 380, 383 (77 SE 209), quoted in *Mallin v. Mallin,* 227 Ga. 833 (183 SE2d 377). The *Mallin* case is cited in *Prince & Paul v. Don Mitchell's WLAQ, Inc.,* 127 Ga. App. 502 (194 SE2d 269) and *Busby v. Citizens Bank,* 131 Ga. App. 738 (206 SE2d 640), both of which latter construe it as a holding that "extensive questioning concerning financial affairs might tend to incriminate a person *as a matter of law.*" We would therefore recognize a distinction between questions of this kind asked in, say, the course of a jury trial, and those asked by way of post-judgment interrogatories where no jury is involved. There is also a recognized distinction between civil and criminal proceedings. The last expression of opinion on the subject by our own courts appears in *Page v. Page,* 235 Ga. 131, 132 (218 SE2d 859), where a defendant in a contempt hearing for nonpayment for alimony refused to answer questions relating to his financial ability. The court stated: "The protections of the Fifth Amendment may be invoked in civil as well as criminal actions, Lefkowitz v. Turley, 414 U. S. 70, 77; Arndstein v. McCarthy, 254 U. S. 71, and apply fully to state proceedings through the Fourteenth Amendment. Malloy v. Hogan, 378 U. S. 1. A criminal defendant may not be compelled to take the stand at all, thus in effect being allowed to invoke the Fifth Amendment against any and all questions. Other persons, however, cannot stymie questioning totally, but must take the stand when called and decide after each question whether to invoke the privilege or not." Since the writer of the *Malloy* and *Prince & Paul* cases is the same, we assume that there is no conflict between them. We therefore conclude that in a civil action the burden is on the reneging defendant to consider each question separately and state his general reason for refusal to answer if he refuses, at which point the trial judge may decide either that the question *might* be incriminating under certain circumstances (whether or not the defendant had in fact committed any crime) or whether or not the line of questions as a whole, and as a matter of law, might so tend. Thus, in a civil case, the discretion of

neither is absolute. This coincides with the federal rule as stated in Capitol Products Corp. v. Hernon, 457 F2d 541, where the same objection was urged against post-judgment interrogatories addressed to a defendant in a civil case under the analogous Rule 69, Fed. Rules Civ. Proc., 28 USCA. The court held that there ". . . is no blanket Fifth Amendment right to refuse to answer questions in noncriminal proceedings '. . . The privilege must be specifically claimed on a particular question and the matter submitted to the court for its determination as to the validity of the claim,' " and quoting Hoffman v. United States, 341 U. S. 486, 487, held that " '. . . it need only be evident that from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. . .' " Id., p. 543. It is also there pointed out that the argument may be entirely hypothetical; the interest of the court is not that the defendant *may* be criminally implicated by an answer but that *he might conceivably* be so implicated.

What is impermissible is that the defendant merely slide out of his obligations by a brash assertion that any and all questions directed to him would tend to incriminate him, regardless of the likelihood of such result. The questions must at the very least be considered on an individual basis and answered accordingly.

*Judgment reversed. Webb and Birdsong, JJ., concur.*