## A98A1543. ANDERSON v. SOUTHERN GUARANTY INSURANCE COMPANY OF GEORGIA.
### (508 SE2d 726)

ANDREWS, Chief Judge.

Southern Guaranty Insurance Company of Georgia filed a petition for a declaratory judgment seeking a ruling from the trial court as to its duty to insure and defend its insured, Betty Anderson, under a homeowner's insurance policy. Anderson demanded insurance coverage and a defense under the policy after she was sued for damages by Heddie Ruth Vaughn and her husband, Gary Vaughn, who alleged in their complaint that Anderson injured Heddie Vaughn by the commission of various intentional torts. In granting summary judgment in favor of Southern Guaranty, the trial court declared that no coverage or duty to defend existed because the insurance policy excluded coverage for bodily injury expected or intended by Anderson. Anderson appeals from the grant of summary judgment to Southern Guaranty.

In the action against Anderson, the complaint alleged that Anderson entered the school bus Heddie Vaughn was driving, which was occupied by school children at the time, and began shouting obscenities at Vaughn. Vaughn alleged that Anderson struck her repeatedly with a cane, then grabbed her by the foot and dragged her off the bus onto the ground, where Anderson resumed the attack by striking and kicking her. As a result of the attack, Vaughn alleges that she sustained torn knee ligaments, a gash on her ear, and multiple contusions. In three of the five counts set forth in the complaint, Vaughn alleged that, by this conduct, Anderson committed: (1) assault and battery by striking her with a cane and kicking her; (2) false imprisonment by detaining her on the bus, preventing her from driving away, and dragging her off the bus; and (3) intentional infliction of emotional distress. The fourth count sought the imposition of punitive damages, and the fifth count was a loss of consortium claim by Gary Vaughn.

It is undisputed that Anderson denied the allegations made in the Vaughns' action, and that Anderson claimed any injuries sus-

tained by Vaughn in the incident were accidental and not expected or intended. Anderson asserted that Southern Guaranty was required under the insurance policy to provide her with coverage and to defend her on the allegations in the complaint. It is also undisputed that criminal charges were filed against Anderson as a result of the incident with Vaughn and that Anderson was convicted in a jury trial of aggravated assault on Vaughn with a cane, simple battery by kicking Vaughn, and seven counts of reckless conduct for endangering the safety of school children. The convictions were affirmed on appeal in *Anderson v. State*, 228 Ga. App. 453 (491 SE2d 893) (1997).[1] During the criminal trial, Anderson testified in her own defense that she did not strike or kick Vaughn; that she grabbed Vaughn's foot only to protect herself from being kicked by Vaughn, and that Vaughn tripped or fell out of the bus. Id. at 454. It is clear that, in filing the petition for declaratory judgment, Southern Guaranty was aware of Anderson's contentions that she did not expect or intend to injure Vaughn and that any injuries sustained by Vaughn were accidental.

In its summary judgment motion, Southern Guaranty showed that the insurance policy at issue provided personal liability coverage as follows: "If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will: 1. pay up to our limit of liability for the damages for which the insured is legally liable; and 2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. . . ." Under the policy, an "occurrence" is defined as "an accident . . . which results, during the policy period, in: . . . bodily injury. . . ." "Bodily injury" is defined as "bodily harm, sickness or disease. . . ." The policy also contains an exclusion which provides that personal liability and medical payments coverage does not apply to bodily injury "which is expected or intended by the insured."

Applying these policy provisions, we first conclude that Southern Guaranty had no duty to provide coverage for or to defend against the allegation in the Vaughns' complaint that Anderson injured the Vaughns by intentional infliction of emotional distress. The insurance policy provides for coverage and a defense against "bodily injury" not mental or emotional injury. Because the policy defines "bodily injury" as "bodily harm, sickness or disease," the purely mental harm alleged in the count of the complaint for intentional

---

[1] Since a criminal conviction cannot be taken as evidence in a civil action to establish the truth of the facts on which the conviction was rendered, the fact that Anderson was convicted on criminal charges arising out of the incident with Vaughn is not evidence in the present case to establish that Anderson expected or intended bodily injury to Vaughn. *Continental Cas. Co. v. Parker*, 161 Ga. App. 614, 617 (288 SE2d 776) (1982).

infliction of emotional distress is not covered by the policy. *Bates v. Guaranty Nat. Ins. Co.*, 223 Ga. App. 11, 12-13 (476 SE2d 797) (1996).

The provisions of the policy also clearly provide that Southern Guaranty had a duty to provide coverage and a defense against accidental occurrences in which any resulting bodily injury was not expected or intended by Anderson. In the remaining allegations of the complaint, the Vaughns' complaint alleged intentional conduct by Anderson which was not an accident and which resulted in bodily injury to Vaughn clearly expected or intended by Anderson. Accordingly, Southern Guaranty contends there was no coverage under the policy, and it had no duty to provide a defense to the suit.[2]

We find no ambiguity in the provisions of the policy limiting coverage to accidental occurrences not expected or intended by Anderson. *Continental Cas. Co. v. Parker*, 161 Ga. App. 614, 615-616 (288 SE2d 776) (1982). It follows that, if the intentional acts by Anderson alleged in the Vaughns' complaint are the true facts, the damages resulting from these intentional acts would clearly have been expected or intended by Anderson, and Southern Guaranty would have no duty to provide liability coverage or a defense. *Penn-America Ins. Co. v. Disabled American Veterans*, 268 Ga. 564, 565 (490 SE2d 374) (1997); *Bates*, 223 Ga. App. at 14-15; *Hain v. Allstate Ins. Co.*, 221 Ga. App. 486-487 (471 SE2d 521) (1996). However, Anderson denied that the facts alleged in the complaint are the true facts. To the contrary, in demanding coverage and a defense from Southern Guaranty, Anderson made general assertions, of which Southern Guaranty was aware, that the true facts showed the injury to Vaughn was accidental and not expected or intended.

Just because the Vaughns alleged facts in their complaint that would result in any damages awarded being excluded from coverage does not, as a matter of law, relieve Southern Guaranty of its separate duty to defend the suit. Considered in light of Anderson's claim that the true facts would place the Vaughns' claim within the policy coverage, we conclude that the insurance contract is ambiguous as to Southern Guaranty's duty to defend. See *Loftin v. U. S. Fire Ins. Co.*, 106 Ga. App. 287, 292 (127 SE2d 53) (1962). "With respect to an exception to the duty to defend, this burden is not carried [by the insurer] merely by proving that the allegations of the complaint

---

[2] In setting forth the facts upon which the various counts were based, the complaint at one point alleges that Anderson "maliciously, negligently, and intentionally" struck Vaughn with the cane. Despite the use of the word "negligently" in setting forth the facts adopted in the counts of the complaint, there is no reasonable basis for construing the complaint as setting forth a claim based on negligent conduct. The complaint clearly seeks damages caused by intentional torts.

allege facts excluding the claim from the policy." Id. at 294. Not only are exclusions invoked by the insurer strictly construed against the insurer as the drafter of the document, but insurance contracts are to be construed in accordance with the reasonable expectations of the insured. *Richards v. Hanover Ins. Co.*, 250 Ga. 613, 615 (299 SE2d 561) (1983); *Loftin*, 106 Ga. App. at 294. "In considering the policy as a whole, [Anderson] might well conclude that [Southern Guaranty] would defend any suit arising from an accidental injury in truth covered by the policy despite the manner in which the injured party presented [the] claim." Id. at 295.

Given Anderson's claim that the complaint against her falsely indicated noncoverage and that the true facts would place the claim within the policy coverage, the issue with respect to the duty to defend is whether the true facts showing coverage were known or ascertainable to Southern Guaranty. *Penn-America*, 268 Ga. at 565. "If the true facts are known or ascertainable to the insurer at the outset, then the insurer is obligated to defend the suit, just as if the complaint against the insured falsely alleged coverage." Id. at 565. Under these circumstances, Southern Guaranty had a duty to conduct a reasonable investigation into Anderson's contentions, and if the investigation revealed facts arguably placing the claim within the policy coverage, then Southern Guaranty would have a duty to defend. *Colonial Oil Indus. v. Underwriters Subscribing to Policy Numbers &c.*, 268 Ga. 561, 562 (491 SE2d 337) (1997).

"[W]hen the complaint on its face shows no coverage, but the insured notifies the insurer of factual contentions that would place the claim within the policy coverage[,] . . . the insurer has an obligation to give due consideration to its insured's factual contentions and to base its decision [as to whether to provide a defense] on 'true facts.' The requirement that an insurer base its decision on true facts will necessitate that the insurer conduct a reasonable investigation into its insured's contentions. To relieve an insurer of any duty to investigate its insured's contentions would allow the allegations of a third-party to determine the insured's rights under its contract. Placing a duty of investigation on insurers in these limited circumstances is not an unreasonable burden, especially in light of the availability of the 'procedurally safe course' of providing a defense under a reservation of rights and filing a declaratory judgment action to determine its obligations. An insurer who fails to investigate its insured's contentions and refuses a defense will be liable for a breach of the duty to defend if a reasonable investigation at the time would have established the potential for coverage." (Footnotes omitted.) *Colonial Oil*, 268 Ga. at 562 (2).

Southern Guaranty filed the present petition for declaratory judgment to pursue a reasonable investigation into Anderson's con-

tention that the true facts obligated it to provide coverage and a defense. In doing so, Southern Guaranty deposed Anderson to question her regarding her contention that the true facts showed Vaughn's injuries were accidental and that she did not expect or intend bodily injury to Vaughn. Anderson, however, repeatedly refused to answer questions as to what happened during the incident with Vaughn. On the advice of her attorney, Anderson refused to answer these questions citing her Fifth Amendment privilege against self-incrimination. Anderson did give general testimony that any injuries suffered by Vaughn were accidental and that she did not expect or intend bodily injury to Vaughn.

In citing her privilege against self-incrimination, Anderson contended that, even though she had been found guilty on the criminal charges arising out of the incident at issue, a real danger of self-incrimination still existed because of the possibility that her pending motion for a new trial in the criminal case could have been granted by the trial court. Under these circumstances, we conclude that a danger of self-incrimination sufficient to support assertion of the privilege still existed. *Stallings v. State*, 136 Ga. 131 (70 SE 1015) (1911); *Duvall v. State*, 259 Ga. 801, 802 (387 SE2d 880) (1990). Moreover, Anderson's election to testify in the prior criminal trial did not waive her rights under the Fifth Amendment in the present action. *Mallin v. Mallin*, 227 Ga. 833, 836 (183 SE2d 377) (1971).

Southern Guaranty contends that Anderson's refusal to answer these questions placed her in violation of provisions in the insurance contract. The insurance policy provides that, after a claimed accident, the insured has a duty "to secure and give evidence." The policy also provides that "the entire policy will be void if, whether before or after a loss, an insured has . . . intentionally concealed or misrepresented any material fact or circumstance." Southern Guaranty claims that Anderson violated these provisions by refusing to answer questions material to its investigation into whether it was obligated to provide coverage and a defense.

In response, Anderson contends that to conclude she violated the insurance contract by refusing to answer questions regarding Vaughn's claim would unfairly penalize her for exercising her Fifth Amendment privilege. She contends she was unfairly forced to confront the dilemma of either refusing to answer questions in violation of the insurance contract, or answering the questions and forfeiting her Fifth Amendment rights.

The Fifth Amendment, which may be invoked in civil as well as criminal actions, "shields against compelled self-incrimination, not legitimate inquiry, in the truth-seeking process." (Citation and punctuation omitted.) *Axson v. Nat. Surety Corp.*, 254 Ga. 248, 249 (327 SE2d 732) (1985); *Page v. Page*, 235 Ga. 131, 132 (218 SE2d 859)

(1975). The general rule is that there is no unconstitutional infringement of the Fifth Amendment privilege by forcing an individual to risk disadvantage in a civil case by refusing to provide material facts for fear of self-incrimination in a pending criminal case. *Baxter v. Palmigiano*, 425 U. S. 308, 317-318 (96 SC 1551, 47 LE2d 810) (1976); *United States v. White*, 589 F2d 1283, 1286-1287 (5th Cir. 1979). However, an exception to the general rule has been recognized in cases where an individual who is a defendant in pending civil and criminal cases is forced to choose between forfeiting the privilege against self-incrimination or losing the civil case by automatic summary judgment. *Pervis v. State Farm &c. Co.*, 901 F2d 944, 947 (11th Cir. 1990). The exception does not apply if assertion of the privilege merely results in loss of the defendant's most effective defense rather than an adverse summary judgment. Id.; *White*, 589 F2d at 1287.

Although Southern Guaranty instituted the present declaratory judgment action naming Anderson as a defendant, it did so to investigate the contentions made by Anderson when she claimed any bodily injury to Vaughn was accidental and demanded that Southern Guaranty provide insurance coverage and a defense to the Vaughns' suit. Under these circumstances, the dilemma of which Anderson complains was of her own making. Anderson cannot wield her Fifth Amendment privilege as a shield and a sword by demanding coverage and a defense under the insurance contract, while at the same time refusing to answer questions material to determining Southern Guaranty's duties under the contract. See *Pervis*, 901 F2d at 947. In the present declaratory judgment action, Anderson is not in the position of the usual defendant involuntarily brought into a civil case, then forced to confront the dilemma of surrendering the privilege against self-incrimination or suffering an adverse judgment. See id.; *White*, 589 F2d at 1286-1287. Rather, Anderson's demands for insurance coverage and a defense of the suit place her in a position more akin to that of a plaintiff who creates her own dilemma by bringing a civil action to enforce a contract, and who then refuses to provide information material to the defendant's defense by asserting the Fifth Amendment privilege. Id.; *Pervis*, 901 F2d at 947; see *Savannah Surety Assoc. v. Master*, 240 Ga. 438, 439 (241 SE2d 192) (1978).

The above facts and law support the conclusion that the Fifth Amendment privilege against self-incrimination did not excuse Anderson from complying with her obligations under the insurance contract. Although Anderson was entitled to invoke her Fifth Amendment privilege in refusing to answer questions regarding what happened between her and Vaughn, Southern Guaranty claims that the result was a breach of the insurance contract which voided coverage by Anderson's failure to give material information required to be provided under the terms of the contract. *Page*, 235 Ga. at 136; *Halcome*

*v. Cincinnati Ins. Co.*, 254 Ga. 742, 744 (334 SE2d 155) (1985).

Based on the above facts, without more, we would agree with Southern Guaranty that there would have been a material breach of the contract voiding coverage. Anderson was not compelled to incriminate herself, nor is there a basis for concluding that a grant of summary judgment against Anderson on these facts would constitute an undue penalty for invoking the privilege against self-incrimination. Accordingly, the Fifth Amendment would not prohibit the grant of summary judgment against Anderson.

However, there are additional facts in this case demonstrating that summary judgment against Anderson was not appropriate. At the time Anderson refused to answer questions based on her Fifth Amendment privilege, she offered to fully answer the questions after the pending criminal proceedings and the danger of self-incrimination had terminated. "Willfulness and fraud are essential ingredients to substantiate the defense of failure to co-operate." (Citation and punctuation omitted.) *Southern Mut. Ins. Co. v. Mason*, 213 Ga. App. 584, 588 (2) (445 SE2d 569) (1994). Given Anderson's offer to fully cooperate and answer the questions after the termination of the criminal proceedings against her, we find no basis to conclude that Anderson's refusal to cooperate was wilful or fraudulent. Id. Furthermore, Southern Guaranty has made no showing on the present record that any delay in obtaining information from Anderson had a materially adverse impact on its ability to protect its rights as to the claim. Id. Since the criminal proceedings against Anderson, including her appeal of the conviction, have terminated, Southern Guaranty will be entitled upon the return of the remittitur in the present case to complete its investigation by questioning Anderson without a Fifth Amendment limitation.]

As the record presently stands, with the evidence viewed in favor of Anderson as the respondent on summary judgment, we find a factual issue exists as to whether any bodily injury to Vaughn was expected or intended by Anderson. *Parker*, 161 Ga. App. at 616-617. Accordingly, the trial court erred in granting summary judgment in favor of Southern Guaranty to the extent it declared that Southern Guaranty had no duty to provide coverage or a defense to the claims against Anderson based on bodily injury to Vaughn. As previously stated, the trial court properly granted summary judgment to Southern Guaranty to the extent it declared Southern Guaranty had no duty to provide coverage or a defense to claims against Anderson based on intentional infliction of emotional distress.

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED NOVEMBER 2, 1998 —
RECONSIDERATION DENIED NOVEMBER 17, 1998 

*Word & Simmons, Gerald P. Word*, for appellant.
*Johnson, Dangle & Parmer, Robert F. Dangle*, for appellee.