A06A1248. CHUMLEY v. STATE OF GEORGIA.
(637 SE2d 828)

BARNES, Judge.

Johnny Chumley was indicted for violations of the Georgia Racketeer Influenced and Corrupt Organizations Act (hereinafter "RICO") for his involvement in the "making and settling of bets on rooster fighting." The State also filed a complaint for the forfeiture of certain real property pursuant to the provisions of OCGA § 16-14-7, alleging that Chumley and others had used the property to further certain racketeering activities.[1] It also filed a RICO lien notice against the two pieces of property which totaled almost fifty acres. In conjunction with the complaint, the State filed its first request for admissions, interrogatories, and the production of certain documents. Chumley answered, denying the allegations, and shortly thereafter filed a motion for a protective order pursuant to OCGA § 9-11-26 (c) requesting that he not be required to respond to the State's discovery request pending the final disposition of his criminal case. The trial court denied Chumley's motion, but certified the matter for immediate review. We granted Chumley's interlocutory application, and this appeal ensued.

---

[1] The State later amended the complaint and attached a copy of the Georgia Bureau of Investigation's application for arrest and search warrants.

1. Chumley maintains that the trial court erred in denying his motion for a protective order because the information sought by the State in his civil forfeiture action is invasive and directly implicates the constitutional guarantees afforded him in the ensuing criminal proceeding. He argues that the trial court's denial has placed him in the untenable posture of either responding to the civil discovery and "sacrificing his state and federal constitutional guarantees or not responding to the Complaint and sacrificing any and all interest he may have . . . in the properties of this forfeiture action."

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . ." OCGA § 9-11-26 (b) (1). OCGA § 9-11-26 (c) authorizes the trial court in which an action is pending, "[u]pon motion by a party or by the person from whom discovery is sought and for good cause shown, . . . [to] make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The grant or denial of a motion for protective order generally lies within the sound discretion of the trial court, *Bridges v. 20th Century Travel*, 149 Ga. App. 837, 839 (256 SE2d 102) (1979), and the exercise of that discretion is reviewed on appeal for abuse. *Fulton County Bd. of Assessors v. Saks Fifth Avenue*, 248 Ga. App. 836, 842 (547 SE2d 620) (2001).

The question before us is whether Chumley can rely on the Fifth Amendment to justify a protective order to stay *all* discovery pending the conclusion of his criminal RICO case. We can find no legal basis for concluding the affirmative.

In *Axson v. Nat. Surety Corp.*, 254 Ga. 248 (327 SE2d 732) (1985), our Supreme Court upheld the denial of a protective order filed by a former court clerk who had been indicted for various criminal activities but also faced a civil action based on an indemnification agreement with the underwriter of his public official bond. During the civil proceeding, the clerk did not respond to the discovery request, but filed a motion for a protective order asserting that responding to the discovery requests acted to undermine his Fifth Amendment privilege against self-incrimination because he had to choose between his constitutional right to defend himself in the criminal matter and his equally compelling right to defend himself in the civil action. Id. at 249.

The Court found that, while a party may invoke his Fifth Amendment privilege during discovery in civil proceedings, "the fact that a party raises the privilege does not of itself establish the hazard of incrimination." (Citation and punctuation omitted.) *Axson*, supra, 254 Ga. at 250.

The Fifth Amendment shields against compelled self-incrimination, not legitimate inquiry, in the truth-seeking process. The party seeking discovery is then entitled to make a motion to compel discovery under [Fed. R. Civ. Proc.] 37 (a). (Compare OCGA § 9-11-37 (a).) It thereafter becomes the responsibility of the trial court to determine whether the refusal to respond to discovery is within the privilege claimed.... We hold that where a party asserts the Fifth Amendment privilege against self-incrimination to matters sought to be discovered, he must respond to each question asked, asserting the privilege to those questions he deems necessary....

A party is protected by the Fifth Amendment where the danger of incrimination is "real and appreciable." A party may raise the Fifth Amendment to any interrogatories or requests for admissions, the answers to which might be a link in an incriminating chain or provide a lead to other usable evidence. . . . Thus, if the party seeking discovery makes a motion to compel discovery, OCGA § 9-11-37 (a), the trial court must determine whether the privilege has been validly raised to each question. The trial court will not be able to effectively decide whether the privilege is validly raised unless there is a record of the questions propounded, including those to which the privilege has been asserted. In making the determination, the trial court should consider the implications of each question to which the privilege is raised and the setting in which it is asked. Where questions are on their face innocent, the party raising the privilege may be required to provide sufficient information on which the court may find that a real danger of incrimination exists. If the trial court determines the privilege has been properly raised, then the matter is not discoverable.

(Citations and punctuation omitted.) Id. at 249-250.

In *Christopher v. State of Ga.*, 185 Ga. App. 532 (364 SE2d 905) (1988), the trial court granted the district attorney a protective order to stay all discovery in two forfeiture actions brought pursuant to OCGA § 16-13-49 (drug act forfeitures) pending the resolution of the defendant's criminal proceedings. The DA claimed that the requested discovery would prejudice the criminal prosecutions but did not specify how such prejudice might occur. Id. at 533. In reversing the stay, this court held that "the discovery provisions of the Civil Practice Act must be deemed applicable to [condemnation] proceedings to the extent that they do not conflict with the procedure set forth in the statute." Id. at 532-533.

> The governmental interest in suspending discovery in a civil forfeiture action pending the resolution of related criminal proceedings has long been recognized by the federal courts. In 1984, Congress promulgated 21 USC § 881 (i), authorizing the federal courts, upon motion and for good cause shown, to stay such forfeiture proceedings where a related indictment is pending. Although the Georgia condemnation statute is in other respects similar to the federal statute, it does not contain any provision for such a stay. However, OCGA § 9-11-26 (c) does establish a general statutory basis for the entry of protective orders limiting or curtailing discovery under appropriate circumstances, provided such limitations do not have the effect of frustrating and preventing legitimate discovery.

(Citations and punctuation omitted.) Id. at 533. That being so, a merely conclusory allegation that any and all discovery would prejudice the criminal investigation, without more, would frustrate legitimate discovery, as would either an unreasonable or indefinite stay. Id.

It follows that a blanket invocation of the Fifth Amendment privilege against self-incrimination, with no consideration for the actual implications of each inquiry as to that privilege, would prevent legitimate discovery of nonprivileged information. While the

> privilege against self-incrimination extends not only to those answers that would in themselves support a conviction, but also to answers creating a "real and appreciable" danger of establishing a link in the chain of evidence needed to prosecute . . . [,] the trial court must determine if the answers *could* incriminate the witness. If so, then the decision whether it *might* must be left to the witness. On the other hand, where the trial court determines that the answers *could not* incriminate the witness, he must testify or be subject to the court's sanction. It is for the court to decide if the danger of incrimination is "real and appreciable."

(Citations and punctuation omitted.) *In re Tidwell*, 279 Ga. App. 734, 743 (5) (632 SE2d 690) (2006).

Accordingly, we do not find that the trial court abused its discretion in denying Chumley's motion for a protective order.

2. Because of our decision in Division 1, we need not inquire into whether the Georgia RICO Act would or would not be frustrated by the issuance of protective orders in an in rem forfeiture proceeding during the pendency of criminal proceedings.

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED OCTOBER 25, 2006.

*George W. Weaver, Barbara A. Sosebee*, for appellant.
*Joe W. Hendricks, Jr., District Attorney*, for appellee.